**Dated: December 17, 2004**

**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TIMOTHY CHARLES RATLIFF and** | ) | Case No. 03-74149 |
| **BARBARA LYNN RATLIFF** | ) | Chapter 13 |
| | ) | |
| Debtors, | ) | |
| | ) | |
| **TIMOTHY CHARLES RATLIFF and** | ) | |
| **BARBARA LYNN RATLIFF** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. No. 04-7018 |
| | ) | |
| **FORD MOTOR CREDIT COMPANY** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

This Court is asked to determine whether a secured creditor can withhold possession of a debtor's car post-petition, that was lawfully repossessed pre-petition, until the debtor pays a repossession fee. The answer is no.

On the 9th day of November, 2004, the above-referenced adversary proceeding came on for trial. Both parties have submitted additional authorities per order of this Court. After hearing the testimony of the witnesses and reviewing the evidence presented this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

FINDINGS OF FACT

Debtors purchased a 1998 Ford Navigator (the "vehicle") on credit, in which the Defendant retained a security interest, and then properly perfected its interest. The Debtors fell behind on their payments and the Defendant repossessed the vehicle sometime between October 16 and October 19, 2003. At the time of repossession the Debtors owed the Defendant approximately $19,286.72 and $2,897.45 in arrears. The vehicle was stored at a location owned by a third party. The vehicle was insured by the Debtors through Progressive Insurance, although there is some dispute as to when the Defendant demanded proof of insurance. On October 20, 2003, the Debtors filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code. Ford was listed as a secured creditor and received notice of the bankruptcy.

At the time of filing, the Debtors lived in Muskogee, Oklahoma, and Mr. Ratliff worked in Muskogee. Mr. Ratliff now is employed in Tulsa, Oklahoma. Ms. Ratliff works in Oklahoma City at Cingular Wireless and stays in an apartment there during the week. Ms. Ratliff depended on the vehicle for transportation to work and taking the Debtors' son to school. The Debtors also have a 1994 Nissan Sentra that is not in working condition. While employed in Muskogee, Mr. Ratliff used a company car for transportation.

On October 23, 2003, Debtors' counsel sent a letter to the Defendant and counsel for Defendant

requesting the return of the vehicle. The Defendant then informed Debtors' counsel that the Debtors could obtain their vehicle if they paid $300.00 in repossession fees incurred by the Defendant. The Defendant further advised that the vehicle was stored at a different location and the Debtors may have to pay an auction expense fee to pick up the vehicle from its location. Mr. Ratliff also attempted to contact the Defendant several times following the repossession, and was eventually informed that the location of the vehicle would be disclosed upon the payment of a $300.00 fee.

The Defendant states that the parties reached an agreement whereby the vehicle would be released by the Defendant upon the Debtors' payment of the $300.00 repossession fee.

On December 30, 2003, the Debtors paid the $300.00 repossession fee by Western Union, which cost an additional $11.75. In late January, 2004, the Debtors learned the location of the vehicle and were able to obtain it. The Debtors paid an auction expense fee of $125.00 to pick up the vehicle. Mr. Ratliff testified at the hearing the vehicle was not in the same condition when he picked it up, and that it had sustained some damage.

The Debtors rented a car during the months they were without the vehicle. Mr. Ratliff testified that he paid a total of $ 2,040 in fees for the rental of a Grand Am. Mr. Ratliff paid for the rental fees with his company credit card, stating at the hearing that he had no other credit cards. Mr. Ratliff stated that as a result of using the company credit card he subsequently lost his job in Muskogee in March of 2004, where he had been earning approximately $29 per hour. In November of 2004, Mr. Ratliff obtained his current employment in Tulsa, Oklahoma, at the rate of approximately $10 per hour.

Debtors filed this adversary proceeding on February 9, 2004. Debtors initially included Times Up Recovery, Inc. as a defendant, alleging various causes related to the actual repossession of the vehicle.

3

Debtors subsequently reached a settlement with Times Up Recovery, Inc., and the Debtors received $1000.00. The Debtors' claims against Times Up Recovery, Inc., were dismissed by a Joint Stipulation of Dismissal filed on April 2, 2004.

CONCLUSIONS OF LAW

It is not disputed that the vehicle, while repossessed pre-petition, was property of the bankruptcy estate. This Court must determine whether the Defendant violated the automatic stay by refusing to turnover the vehicle until the $300.00 repossession fee was paid by the Debtors.

Section 362 of the Bankruptcy Code provides in part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –
> \* \* \*
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.
> \* \* \*
> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(a) & (h). A violation of the automatic stay is "willful" when a creditor knows of the automatic stay and its actions that violate the automatic stay are intentional; a finding of specific intent to violate the stay is not required. *Diviney v. Nationsbank of Texas, N.A. (In re Diviney)*, 225 B.R. 762, 774 (10th Cir. BAP 1998) (citations omitted). It is irrelevant whether a creditor believes in good faith that it had a right to the property in determining whether the act was willful. *Id.*

There is a split in authority as to whether a secured creditor is required to automatically turnover a repossessed vehicle following a bankruptcy filing. Some courts hold that the continued possession of

4

Case 04-07018   Doc 54   Filed 12/20/04   Entered 12/20/04 13:29:38   Desc Main
Document      Page 4 of 7

estate property is equivalent to exercising control over the property in violation of the automatic stay. *See e.g., TranSouth Fin. Corp. v. Sharon (In re Sharon),* 234 B.R. 676 (6th Cir. BAP 1999); *Knaus v. Concordia Lumber Co. Inc. (In re Knaus)*, 889 F.2d 773 (8th Cir. 1989).

As stated by the Court of Appeals for the Eighth Circuit:

> We fail to see any distinction between a failure to return property taken before the stay and a failure to return property taken after the stay. In both cases the law clearly requires turnover. The duty to turn over the property is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor. Rather, the duty arises upon the filing of the bankruptcy petition. The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to "exercise control over the property of the estate" in violation of the automatic stay.

*In re Knaus,* 889 F. 2d at 775 (citations omitted).

Other courts hold that secured creditors do not have to automatically turnover a vehicle that has been repossessed pre-petition. *See e.g., In re Young,* 193 B.R. 620 (Bankr. D. D.C. 1996); *Massey v. Chrysler Fin. Corp. (In re Massey),* 210 B.R. 693 (Bankr. D. Md.). These cases hold that a creditor retaining estate property that was repossessed pre-petition is merely maintaining the status quo instead of exercising control over the property. These cases also find that the requirement to turnover property of the estate is not self-effectuating, noting that secured creditors are entitled to an adequate protection hearing.

The Defendant argues that it was maintaining the "status quo" following the bankruptcy filing. However, this Court agrees with the first line of cases and believes that the Defendant was keeping property of the estate in violation of the automatic stay. "The 'status quo' defined by nonbankruptcy law ... is changed by the Bankruptcy Code." *In re Sharon,* 234 B.R. at 683. The Defendant's duty to deliver possession of estate property is not defeated by its right to adequate protection. *Id.* The Defendant could

5

have sought adequate protection through proper bankruptcy procedures. Furthermore, this Court is of the opinion that requiring the payment of a repossession fee is *not* "maintaining the status quo."

The Defendant could have utilized § 362(f) of the Bankruptcy Code which gives expedited stay relief for creditors upon certain findings; however, the Defendant withheld possession of the vehicle. This Court finds that the Defendant exercised control over estate property, thereby willfully violating the automatic stay, when it refused to turnover the vehicle, or disclose the location of the vehicle, until the repossession fee was paid.

The Defendant also contends that the parties had reached an agreement as to the payment of the repossession fee, and that retaining the vehicle pending adequate protection was not a violation of the automatic stay. There was no evidence of this agreement besides the argument of Defendant's counsel. The Debtors did pay the $300.00 repossession fee because they desperately needed their vehicle, not necessarily because they agreed to the fee.

## DAMAGES

As cited above, § 362(h) provides for the recovery of actual damages, including costs and attorneys fees, for an injury due to a willful violation of the automatic stay, and also provides for the recovery of punitive damages in appropriate circumstances. 11 U.S.C. § 362(h).

Two standards have been used in determining whether punitive damages are appropriate. The first standard allows recovery of punitive damages "when the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Diviney,* 225 B.R. at 776 (*citing Fry v. Today's Homes Inc. (In re Fry)*, 122 B.R. 427, 431 (Bankr. N.D. Okla. 1990) (further citations omitted)). The second standard considers the following factors: "(1) the nature of

6

Case 04-07018   Doc 54   Filed 12/20/04   Entered 12/20/04 13:29:38   Desc Main
Document      Page 6 of 7

the defendant's conduct; (2) the defendant's ability to pay, (3) the motives of the defendant; and (4) any provocation by the debtor." *Diviney,* 225 at 777 (citations omitted). This Court finds that punitive damages are not warranted in this case.

Based on the testimony of Mr. Ratliff and the evidence presented, this Court will award actual damages to the Debtors for the cost of the repossession fee plus charges by Western Union, $311.75, the auction expense fee of $125.00 and the cost of the rental vehicle, $2040.00, for a total of actual damages of $ 2,476.75. This Court will consider an award of attorney fees when counsel submits a separate application in proper form within ten (10) days.

IT IS THEREFORE ORDERED that judgment for the Plaintiff is **granted.** A separate judgment will be entered.

###

APPEARANCES:

Betty Outhier Williams, Attorney for the Plaintiffs

David Marsh and Thomas Marsh, Attorneys for Defendant.

7